**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

REBECCA McCURDY, :
:
    Plaintiff, :
:
vs. : 1:04-CV-151 (WLS)
:
FORD MOTOR COMPANY, :
:
    Defendant. :
_____

## ORDER

Presently pending is Plaintiff's motion *in limine* to exclude evidence concerning the use or non-use of seatbelts by Plaintiff during the automobile accident that is the focus of this litigation. (Doc. No. 53). Defendant has filed a response to the motion. For the following reasons, Plaintiff's motion *in limine* (Doc. No. 53) is **GRANTED.**

## BACKGROUND

This is a product's liability and negligence case in which Plaintiff alleges that a defective "sway bar link system" was the cause of her accident while driving her 1995 Ford Explorer. As a result of the accident she incurred various damages and injuries, to include, but not limited to, medical expenses exceeding $75,000. On December 20, 2006, Plaintiff filed an amended complaint withdrawing all other theories of recovery except the claim of strict liability. (Doc. No. 63). The amended complaint is not opposed by Defendant.

## THE ACCIDENT

On October 19, 2002, Plaintiff McCurdy was driving her 1995 Ford Explore east on Georgia State Route 32. The vehicle, for an unknown reason, drifted onto the right shoulder of the road. Plaintiff attempted to correct by cutting the wheels to the left and then the right in compliance with the classic driving recovery move. Instead of straightening up, the vehicle went into a counter-clockwise "yaw" resulting in a rollover. As a result of the crash, Plaintiff incurred severe injuries. Plaintiff alleges that crash was caused by a defective stabilizer bar linkage that had broken.

1

## **THE ALLEGED DEFECT**

The parties agree that the subject 1995 Ford Explorer was equipped with a "stabilizer bar" that was part of the front end suspension system. The stabilizer bar consisted of a "bow shaped bar that extended nearly the width of the front end of the vehicle. The stabilizer bar was attached to the steering control arm on each front wheel assembly by a shorter vertical linkage bar that connected the steering control arm and the stabilizer bar. The linkage bar or "stabilizer linkage bar" was 8mm in diameter.

Plaintiff contends that her 1995 Ford Explorer had a defective stabilizer linkage bar. According to Plaintiff, the stabilizer linkage bar had broken and fallen off the vehicle sometime prior to the accident. McCurdy maintains that the linkage bar was undersized and unable to handle the stresses of normal operation of the vehicle.

Ford became aware of problems with the stabilizer linkage bar as early as 1997. On September 20, 2000, the National Highway Transportation Safety Agency (NHTSA) launched an investigation into the failure of the linkages. The investigation was designated as PE00-039 and specifically examined the reports of the failure of the front stabilizer bar links on 1995-1996 Ford Explorers. On November 8, 2000, Ford replied to the NHTSA regarding the investigation and acknowledged that Ford's own investigation had revealed that the stabilizer bar link stud could fracture from bending fatigue at approximately 50mm below the head of the stud. Ford agreed to conduct further tests on the parts by November 22, 2000.

In response to interrogatories sent by NHTSA, Ford made certain admission related to the alleged defect. Ford admitted that (1) it had received a large number complaints related to the defects; (2) that it had replaced the 8mm linkage with a 10mm linkage after post production tests; (3) it had received a report from one survey conducted by NHTSA that 50% of the Explorers examined either had broken or replaced links; (4) the majority of warranty reports found a broken or missing links when the vehicle was examined for noise or steering problems; (5) over 6,000 warranty claims had been made for broken or defective links; (6) over 15,000 warranty claims that could be attributed to the stabilizer bar linkage or something similar; and,

(7) testing that showed that a 1996 Explorer with at least one linkage disconnected failed to "meet Ford's extremely severe limit handling criteria." In addition, Ford provided a narrative describing the conditions in which it was found the link failed and a driver's likely experience when a failure occurred.

On November 28, 2000, Ford notified the NHTSA that it would initiate a "Safety-related recall" to replace the 8mm linkage with a new 10mm linkage in approximately 810,000 vehicles. In that notification Ford did not admit that failure of the stabilizer or link caused a loss of control, but did admit "that vehicle handling could be affected at extreme limits." Plaintiff testified that during the eight to nine months prior to the accident that the vehicle swayed and seemed to be off balance when she hit a bump.

## **DISCUSSION**

Apparently Plaintiff was not wearing her seat belt on October 19, 2002, when the vehicle crashed causing her injuries. According to Defendant's expert Dr. Verne L. Roberts, if Plaintiff had been wearing her seat belt she would not have sustained the injuries she suffered when the vehicle rolled over. Plaintiff brings this motion to exclude any evidence from the trial on the question of whether Plaintiff was wearing a seatbelt at the time of the accident.

Plaintiff argues that such evidence should be excluded because Georgia law is clear that such evidence is not admissible in product's liability cases. Further, by abandoning her alternative theories of recovery and relying solely on the theory of strict liability, such evidence is precluded.

Georgia statutory law states in pertinent part:

> Failure to wear a seat safety belt shall not be considered evidence of negligence, shall not be considered by the court on any question of liability of any person, corporation or insurer, ... and shall not diminish any recovery for damages arising out of the ownership, maintenance, occupancy, or operation of a passenger vehicle.

O.C.G.A. § 40-8-76.1(d).

While no Eleventh Circuit case has clearly addressed this code section, the Georgia courts have. In Crosby v. Cooper Tire & Rubber Company, 240 Ga. App. 857, 524 S.E.2d

3

313 (2000) *rev'd on other grounds*, 273 Ga. 454, 543 S.E.2d 21 (2001), the Georgia Court of Appeals held, among other things, that O.C.G.A. § 40-8-76.1(d) is as broad and clear as it first appears. At trial Cooper Tire attempted to get into evidence the fact that the Plaintiffs were not wearing seat belts at the time of the accident. The trial court excluded such evidence and on appeal, Cooper Tire argued such a ruling was erroneous. Crosby, 524 S.E.2d at 320. Cooper Tire argued that O.C.G.A. § 40-8-76.1(b) required all passengers in automobiles to wear seat belts, that the SUV in question was a "truck" and was exempted from the entire statute governing seat belts, that for the exclusion to apply the occupants must be charged with failing to wear a seat belt, that the exclusion violates the equal protection and due process clauses of the Georgia and United States Constitutions, and that the exclusion does not apply to the issue of damages. Id., 524 S.E.2d at 321-23. The Court of Appeals rejected these arguments. The Georgia Supreme Court did not accept *certiorari* on the seat belt issue and reversed the Georgia Court of Appeals on another evidentiary issue. Cooper Tire & Rubber Co. v. Crosby, 273 Ga. 454, 543 S.E.2d 21 (2001).

The Court of Appeals rejected Cooper Tire's truck/automobile exception, the citation and the constitutional arguments in fairly short order. Cooper Tire specifically argued that the use of seat belt was admissible for the limited purposes of "(1) reduction of damages; (2) refutation of an element of plaintiffs' failure to warn claim; and (3) impeachment." Crosby, 524 S.E.2d at 322. The court stated:

> The language of the Act is plain and unambiguous when it says that failure to wear a safety belt 'shall not be considered by the court on any question of liability' and 'shall not diminish any recovery for damages arising out of the ... occupancy, or operation of a passenger vehicle.' The General Assembly intended to statutorily exclude comparative negligence, contributory negligence, causation, and mitigation of damages under former law.

Id.. Unlike general laws of evidence which are generally procedural, the exclusion under the code section is substantive. The court concluded:

> Thus, unlike general rules of evidence which permit admission of evidence for one purpose although not for other purposes, the legislative intent of the statute was to prohibit the admission of

> evidence that no seat belt was worn for *all* purposes. Through successive amendment to the Act, the General Assembly repeatedly expressed its overriding intent not to allow admission of the failure to wear safety belts.

Id.

In the present case, Defendant opposes Plaintiff's motion. Defendant argues that it opposes Plaintiff's motion on grounds that the Georgia courts have never addressed the question of whether such evidence is excludable in a product's liability case involving the design/manufacture of an automobile and that Plaintiff's view of O.C.G.A. § 40-8-76.1(d) is "expansive." Defendant argues in summary that Plaintiff's failure to use her seat belts during the crash is admissible as it helps illustrate "(1) the cause and mechanism of injuries to the plaintiff; (2) the ejection of the plaintiff; and (3) the presence in the subject vehicle of a three-point restraint at the driver side seating position occupied by the plaintiff during the subject crash."

Despite the seemingly clear language of the statute and the clear holding of Crosby, Defendant argues that the reasoning does not apply to the instant case, and its particular facts. Instead, Defendant focuses on what appears initially to be a different analysis or approach to the question.

Defendant sets the stage by pointing out that the Crosby case relied primarily on cases where the driver was reportedly negligent. Defendant glosses over the fact that Crosby, while it may have relied on some cases where the driver or the defendant was negligent, was a strict liability case. In the present case, the Plaintiff has eliminated all other claims or theories, including negligence, and is proceeding to trial solely on the strict liability/products liability theory.

Even so, Defendant correctly points out that strict liability cases require (1) the proof of a defect; and (2) proximate cause of an injury. Banks v. ICI Americas, Inc., 450 S.E.2d 671 (1994). Banks, and all subsequent strict liability cases in Georgia, require the courts to apply a risk/utility analysis. One of the factors to be considered by the courts is "the collateral safety of a feature other than the one that harmed the plaintiff." Banks, 450 S.E.2d at 675, fn 6. The

5

Court notes that this aspect of the analysis is the last of all possible alternative factors that may be considered in the risk/utility analysis listed by the Georgia Supreme Court in its expansive footnote to the standard factors to be considered in a products liability case. In fact, the court does not define what is meant by the statement, but one surmises that it entails a design feature which is a safety feature that has odd unintended dangerous consequences. Either way, it is not high on the list of factors to be considered in the standard risk/utility analysis.

Defendant argues that use or lack of use of a safety restraint in a rollover case is a question of proximate cause. Such an analysis is without merit and is rejected.[1] At best evidence that Plaintiff's failure to use the seatbelts provided in the vehicle are evidence of mitigation. Georgia law, as discussed in detail above, does not allow evidence of the failure to use a seat belt to show a failure to mitigate damages. Likewise, as argued by Ford, the use or failure to use seat belts does not shed any light on the defect alleged in the complaint, that a stabilizer link was negligently designed or manufactured. It may illustrate the secondary conclusion that after the link failed the vehicle was designed sufficiently to have mitigated or prevented Plaintiff's injuries, *i.e.,* "crashworthiness." However, that is not the question presented. Further, as stated previously, Georgia law as currently reflected does not allow any further overt analysis or focus. <u>See</u>, <u>Crosby</u>. 524 S.E.2d at 322; O.C.G.A. § 40-8-76.1(d). Therefore, Defendant's opposition to Plaintiff's motion *in limine* under the analysis proposed, is rejected.

Defendant also argues, that notwithstanding the apparent clarity of Georgia law, other states have made differing policy decisions and allowed such evidence into a trial. While reasonable people might disagree, and apparently other courts and legislatures have done so, this

---

[1]. Defendant cites to a decision by Judge Tidwell of the U.S. District Court for the Northern District of Georgia, but does not provide a citation to the opinion. Defendant's brief states that the opinion is attached as an exhibit but it is not part of the record on CM/ECF. A Westlaw search shows that the opinion is unpublished. Even so, Defendant acknowledges that Judge Tidwell prevented Ford from introducing evidence that plaintiff failed to wear her seat belt, but did allow evidence that the vehicle was provided with seat belts and that plaintiff was ejected from the vehicle.

is an argument more appropriately directed to the Georgia Supreme Court or the Georgia Legislature. It is not for a U.S. District Court sitting in diversity jurisdiction to interpret the law where the highest court of the state has clearly addressed the question. Therefore, Defendant's opposition to Plaintiff's motion *in limine*, under this theory, is rejected.

Defendant also argues that failure to allow Ford to raise the use of the seat belt violates due process. Ford does not elaborate or explain how the mandatory seat belt law as enacted or the Georgia law precluding the admission of lack of use violates due process, either federal or state. Further, Ford acknowledges that the Georgia Supreme Court, without citing the case, has found the statute to be constitutional. Therefore, Defendant's opposition, on this ground, is also rejected.

Defendant's remaining arguments that the ejection of Plaintiff from the vehicle is admissible and that use or lack of use of the seat belt is admissible to defeat any punitive damage claim. These arguments are essentially the same arguments as previously made but directed at different phases of the trial. The use or lack of use of seat belts still attempts to defeat the causation and damages elements of the tort in question, both of which are prohibited by Georgia law. To the extent that Plaintiff's ejection is part of the operative facts of the vehicle accident and her injuries, the ejection may be admissible, but not as a round-about way to get in her failure to use the seat belt. To the extent that these theories support introducing evidence of lack of seat belt use, Defendant's opposition to the motion *in limine* is rejected. Plaintiff's motion *in limine* (Doc. No. 53) is **GRANTED.** The parties are instructed not to make any reference in the presence of the jury of Plaintiff's ejection from the vehicle until further order of this Court. Counsel shall also instruct their witnesses consistent with this order.

**SO ORDERED**, this   11th   day of January, 2007.

     /s/W. Louis Sands
**W. LOUIS SANDS,  JUDGE**
**UNITED STATES DISTRICT COURT**